UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAWN LEORA AMBROSE-
LOUNSBURY,

       Plaintiff,

  v.

ANDREW SAUL, Commissioner of Social
Security,

       Defendant.

18-CV-240

Decision & Order

---

On February 14, 2018, the plaintiff, Dawn Leora Ambrose-Lounsbury, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 13, 2018, Ambrose-Lounsbury moved for judgment on the pleadings, Docket Item 12; on February 20, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on March 13, 2019, Ambrose-Lounsbury replied, Docket Item 20.

For the reasons stated below, this Court denies Ambrose-Lounsbury's motion and grants the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On May 29, 2014, Ambrose-Lounsbury applied for Supplemental Security Income benefits. Docket Item 10 at 19. She claimed that she had been disabled since February 28, 2012, due to epilepsy, seizures, a back injury, scoliosis, chronic

obstructive pulmonary disease, carpal tunnel syndrome, allergies, and migraine headaches. *Id.* at 19, 208.

On August 19, 2014, Ambrose-Lounsbury received notice that her application was denied because she was not disabled under the Act. *Id.* at 19. She requested a hearing before an administrative law judge ("ALJ"), *id.*, which was held on June 1, 2017, *id.* at 36. The ALJ then issued a decision on August 8, 2017, confirming the finding that Ambrose-Lounsbury was not disabled. *Id.* at 31. Ambrose-Lounsbury appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

## II. THE ALJ'S DECISION

In denying Ambrose-Lounsbury's application, the ALJ evaluated her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations,

2

the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ found that Ambrose-Lounsbury had not engaged in substantial gainful activity since the alleged disability onset date. Docket Item 10 at 21. At step two, the ALJ determined that Ambrose-Lounsbury had several severe impairments: status post bilateral carpal tunnel release, lumbar scoliosis, asthma, a seizure disorder, and migraine headaches. *Id.* at 22. At step three, the ALJ found that

3

Ambrose-Lounsbury's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 23. At step four, the ALJ determined that Ambrose-Lounsbury had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), and the claimant is occasionally able to climb ladders, ropes, and scaffolds, and she is frequently able to kneel, crouch, crawl, and climb ramps and stairs. The claimant is frequently able to handle and finger. The claimant is unable to tolerate extreme heat and cold, wetness and humidity, and loud noise, and she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. The claimant is unable [to] work around hazards such as unprotected heights or dangerous moving mechanical parts. In addition, the claimant is able to work at a low-stress job, which is defined as a job with simple and routine instructions and tasks, no supervisory duties, no independent[] decision-making, no strict production quotas, minimal changes in work routine and processes, frequent interaction with co-workers, and occasional interaction with the general public.

*Id.* at 24. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Ambrose-Lounsbury can perform, such as mailroom clerk or stock checker. *Id.* at 30.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla.

4

It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Ambrose-Lounsbury objects to the ALJ's RFC determination. Docket Item 12-1 at 14. More specifically, she argues only that the ALJ erred by relying on the stale opinion of a consultative examiner, Gilbert Jenouri, M.D., and by not obtaining another medical opinion to replace the stale one. *Id.* at 14, 19.

### II. ANALYSIS

Dr. Jenouri examined Ambrose-Lounsbury on August 15, 2014, and opined about her limitations. Docket Item 10 at 517. Ambrose-Lounsbury suggests that because Dr. Jenouri examined her nearly three years before her hearing, the opinion is stale. Docket Item 12-1 at 14. In support of her argument, she cites *Camille v. Colvin*, 104 F. Supp. 3d 329 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016), for the proposition that "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Id.* at 343-44.

5

Although "[a] stale medical opinion does not constitute substantial evidence to support an ALJ's findings," a "gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172-FPG, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. *Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018). In other words, the "mere passage of time does not render an opinion stale," *id.*, but "significant developments" in an individual's medical history after the examination might. *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

Ambrose-Lounsbury has not shown significant developments in her medical history following Dr. Jenouri's opinion that render it stale. She argues that her new and worsening medical issues included "back, neck, and cervical pain; ankle swelling; and headaches." Docket Item 20 at 2. But almost all of these issues existed before Dr. Jenouri's August 2014 examination. For example, Ann Marie Simmerman, M.D., diagnosed Ambrose-Lounsbury with migraine headaches on December 13, 2013, Docket Item 10 at 414, months before Dr. Jenouri's exam. And on May 5, 2014, more than three months before she saw Dr. Jenouri, Ambrose-Lounsbury saw Christina Roose, D.O., and complained of increased back pain. *Id.* at 560. In fact, in his opinion Dr. Jenouri noted Ambrose-Lounsbury's complaints of "pain [that] radiates from her lower back to her neck and into her head causing headaches." *Id.* at 514.

6

Ambrose-Lounsbury asserts that Dr. Jenouri did not address her migraine headaches.  See Docket Item 12-1 at 16; Docket Item 20 at 2.  But Dr. Jenouri indeed addressed her headaches, see Docket Item 10 at 517, and his failure to label them "migraine headaches" is of no moment.  What is more, the ALJ explicitly accounted for Ambrose-Lounsbury's headaches in determining her RFC.  See id. at 29 (noting that "the claimant reports exacerbations of her physical conditions, particularly headaches, when she experiences stress and difficulty with crowds of people" and explicitly incorporating that into her RFC).  So Ambrose-Lounsbury's objection as to her migraines is not well taken.

Ambrose-Lounsbury's only new ailment after Dr. Jenouri's examination was the "left ankle swelling" noted by Dr. Roosa.  Id. at 571, 580.  But the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC.  So the ankle swelling is hardly a "significant development."

Moreover, the evidence that Ambrose-Lounsbury's back and neck pain or headaches worsened in the years after Dr. Jenouri's examination is negligible at most.  On one occasion in December 2015, Olia Golimowski, ANP, noted Ambrose-Lounsbury's history of "worsening" back pain, id. at 596.  Even if Ms. Golimowski's characterization of this back pain as "worsening" reflected a significant development in Ambrose-Lounsbury's impairment, other treatment records from after Dr. Jenouri's examination reflect no increase in her back pain.  Compare id. at 560 ("having more back pain since labor with her son" in May 2014) with, e.g., id. at 611 (noting a "history of chronic back pain" for which "she denies worsening in her symptoms since stopping . . . medications" in September 2015).  In fact, as to her headaches, Ambrose-

Lounsbury reported "some reduction" in their "intensity and slight reduction in their frequency" in July 2015. *Id.* at 608. Because "the record indicates no meaningful deterioration following [Dr. Jenouri's] examination," Dr. Jenouri's opinion was not stale and the ALJ was permitted to rely on it. *Whitehurst*, 2018 WL 3868721, at *4.

In evaluating a claim of disability, the Commissioner "will consider all *evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant evidence includes objective medical evidence, such as laboratory results or observable abnormalities; medical opinions; other medical evidence; nonmedical evidence; and prior administrative findings. 20 C.F.R. § 404.1513. The ALJ fulfills his or her "'responsibility' of 'assessing [a claimant's] residual functional capacity' by reviewing 'all the relevant evidence' which includes 'objective medical evidence.'" *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (quoting relevant regulations). Here, the ALJ relied on the treatment records of several different providers in addition to Dr. Jenouri's opinion. No apparent inconsistency or lack of evidence required the ALJ to obtain another consultative examination, *see* 20 C.F.R. § 404.1519a(b), so Ambrose-Lounsbury's argument that remand is required for the Commissioner to obtain a medical opinion that is not stale fails. The record includes a medical opinion and treatment notes, and the ALJ's decision was supported by that substantial evidence.

## **CONCLUSION**

For the reasons stated above, the ALJ's decision was neither contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, Ambrose-Lounsbury's motion for judgment on the pleadings is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:     August 16, 2019
             Buffalo, New York

    *s/ Lawrence J. Vilardo*
    LAWRENCE J. VILARDO
    UNITED STATES DISTRICT JUDGE